IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY ) | **14 CV 7723** |
| ) | CIVIL ACTION NO. _____ |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| APPROVED OIL CO. OF BROOKLYN, INC. ) | |
| d/b/a Approved Oil and West End Oil, ) | RECEIVED |
| ) | SEP 24 2014 |
| Defendant. ) | U.S.D.C. E.D. N.Y. |

### COMPLAINT

NOW COMES the Plaintiff, **THE TRAVELERS INDEMNITY COMPANY**, by and through its attorney the LAW OFFICE OF ANDREA G. SAWYERS complaining of the defendant, alleges upon information and belief that at all times hereinafter mentioned:

### INTRODUCTION

1. Plaintiff, THE TRAVELERS INDEMNITY COMPANY (hereinafter "TRAVELERS"), is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business located at 1 Tower Square, Hartford, Connecticut 06183.

2. At all times material hereto, Plaintiff TRAVELERS was engaged in the business of issuing property insurance and was duly authorized to issue policies of insurance within the State of New York.

3. Defendant, APPROVED OIL CO. OF BROOKLYN, INC., doing business as Approved Oil and West End Oil (hereinafter collectively "APPROVED OIL"), is a



corporation organized and existing under the laws of the State of New York, with its principal place of business located at 6741 Fifth Avenue in Brooklyn, New York.

4. The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332 as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the events or omissions giving rise to the claims at issue occurred within this District and Defendant is subject to personal jurisdiction within the District.

## GENERAL ALLEGATIONS

6. At all times material hereto, Plaintiff TRAVELERS's insured, S.I.G. FABRICS, INC. (hereinafter "S.I.G"), was a Tenant in the real property located at 72 Hester Street in New York, NY 10002 (hereinafter "the Property").

7. S.I.G. operated a family owned textile sales business out of the property.

8. At all times material hereto, Plaintiff TRAVELERS insured S.I.G's interests in the business, personal property and stock in trade.

9. At all times material hereto, the Property was owned by Alan & Samuel M. Goldberg, as trustee of the Samuel M. Goldberg 2010 Revocable Trust, and Alice Wildes, hereinafter collectively referred to as the "Property Owners".

10. At all times material hereto, Defendant APPROVED OIL provided boiler and furnace services for residential customers, commercial customers and buildings in New York City, including but not limited to annual tune ups, installation, routine maintenance, repairs, annual inspections, service agreements, service work, maintenance work, inspections, efficiency testing, and conservation advice for customers.

11. At all times material hereto, Defendant APPROVED OIL advertised that its work and services for boilers and furnaces were performed in accordance with applicable industry codes and standards, including but not limited to performing inspections pursuant to the New York State and New York City Building Codes.

12. At all times material hereto, S.I.G. was a known and intended third party beneficiary to the agreements between the Property Owners and Defendant, as the Property was the primary location of Plaintiff's Insured's business.

13. At all times material hereto, S.I.G. was an indirect beneficiary to any and all services and justifiably relied thereon in the complete fulfilment of obligations and services agreed to be performed by defendant at the Property.

14. On or around 2001, a new Peerless oil-fired boiler was installed at the Property.

15. Upon information and belief, prior to June 30, 2011, the Property Owners entered into an annual oil burner service agreement with APPROVED OIL for annual and periodic maintenance and services on the boiler and its components at the Property.

16. Prior to June 30, 2011 and at all other times relevant hereto, the boiler and its components included but were not limited to the boiler and its associated smoke stack, flue piping, and chimney at the Property (hereinafter collectively "the boiler and its components").

17. Upon information and belief, from June 30, 2011 until April 10, 2012, there was an annual boiler service agreement in effect between Defendant APPROVED OIL and the Property Owners.

18. From 2011 until April 10, 2012, Defendant had an ongoing service agreement to provide maintenance and service on the boiler and its components.

19. Under the service agreement between the Property Owners and Defendant Approved Oil, Defendant Approved Oil was required to perform annual tune ups, service and maintenance on the boiler and its components.

20. Under the service agreement between the Property Owners and Defendant Approved Oil, Defendant Approved Oil was required to warn of any hazards and problems and to provide recommendations on necessary work or modification to the system and its components in order to allow the boiler and its components to operate safely.

21. Pursuant to Defendant Approved Oil's own advertising materials, the annual and periodic maintenance and services on the boiler and its components were to be performed in accordance with applicable codes and standard, including but not limited to the New York State and New York City Building Codes.

22. Upon information and belief, work and services were performed at the Property in March 2012 by Defendant Approved Oil.

23. During its work at the Property in March, 2012, Defendant Approved Oil did not provide any oral or written recommendations, warnings, notices, advice, or other paperwork to the Property Owners or Plaintiff's Insured with recommendations or warnings about the use of the boiler and its components, the proximity of stored materials to the boiler and its components, the efficiency of the boiler and its components, recommended cleaning of the boiler and its components, or any other warnings or recommendations related to modifications or alterations to the boiler and its components.

24. Prior to April 10, 2012, Defendant Approved Oil did not provide any oral or written recommendations, warnings, notices, advice, or other paperwork to Plaintiff's Insured with recommendations or warnings about the use of the boiler and its components, the proximity of stored materials to the boiler and its components, the efficiency of the boiler and its

components, recommended cleaning of the boiler and its components, or any other warnings or recommendations related to modifications or alterations to the boiler and its components.

25. On or about April 10, 2012, a fire (hereinafter "the Fire") originated at the boiler and its components and caused substantial damages to the Property.

26. The Fire resulted from inadequate work and services performed by Defendant Approved Oil on the boiler and its components.

27. Given the damage from the Fire, S.I.G. submitted a claim to Plaintiff Travelers.

28. Pursuant to the terms and conditions of its policy of insurance, Plaintiff Travelers has paid its Insured $368,576.00, representing fair reimbursement of the resulting damages, and losses, as covered by and up to the available monetary limits under the applicable policy.

29. To the extent of its payments, and pursuant to its policy of insurance and common law principles of legal and equitable subrogation, Plaintiff Travelers is subrogated to the rights of its Insured.

## COUNT I – NEGLIGENCE

30. Plaintiff repeats and realleges each and every paragraph of the Complaint numbered "1" through "29" as if more fully set forth herein at length and with the same force and effect.

31. The Fire and the resulting damages were directly and proximately caused by the negligence, carelessness, recklessness, negligent omissions and/or gross negligence of Defendant Approved Oil, acting by and through its agents, employees and/or servants, acting within the scope and course of their employment, in:

a.  failing to properly design, connect, configure, maintain and inspect the boiler and its components, including but not limited to the smoke stack, flue piping and chimney;

b.  failing to properly re-connect the boiler and its components during its work and services, including but not limited to the smoke stack, flue piping and chimney, in a good and workmanlike fashion in accordance with generally accepted practices, codes and industry standards;

c.  failing to properly inspect and clean the boiler and all of it components, including but not limited to associated flue piping, smoke stack and chimney, during its work and services at the Property;

d.  failing to ensure that the smoke stack, flue piping and chimney were not blocked;

e.  failing to ensure that the smoke stack, flue piping and chimney had proper insulation;

f.  failing to ensure that the smoke stack, flue piping and chimney had approved clearance reduction;

g.  failing to ensure that boiler and its components, including but not limited to the smoke stack, flue piping and chimney, had proper draft;

h.  failing to ensure that boiler and its components, including but not limited to the smoke stack, flue piping and chimney, had proper and required lengths and dimensions;

i.  failing to check the heat levels and heat conditions of the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, were at safe levels;

j.  failing to properly inspect, design, connect and configure the route, dimensions and length of the boiler's smoke stack, flue piping and chimney;

k.  failing to warn Plaintiff's Insured verbally that the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, were too close to combustible materials;

l.  failing to warn Plaintiff's Insured in writing that the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, were too close to combustible materials;

6

m. failing to warn or otherwise recommend or advise Plaintiff's Insured either verbally or in writing that the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, needed alterations or modifications for safe operation;

n. failing to provide written recommendations or warnings, written notice, or other written paperwork to Plaintiff's Insured with recommendations or warnings about the use of the boiler and its components, the proximity of stored materials to the boiler and its components, the efficiency of the boiler and its components, recommended cleaning of the boiler and its components, and other warnings or recommendations related to modifications or alterations to boiler and its components for safe operations;

o. failing to detect and discover that the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, were clogged and/or otherwise required additional cleaning;

p. failing to detect and discover that the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, lacked proper and adequate insulation;

q. failing to detect and discover that the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, lacked proper and adequate clearance reduction;

r. failing to perform annual service, periodic service, emergency maintenance and other work and services on the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, in a good and workmanlike manner;

s. failing to comply with all applicable codes, standards, regulations, and statutes during its work and services at the Property, including but not limited to the New York State Building Code, the New York City Building Code, the NORA Oil Technician's Handbook, the PMAA Oil Technician's Manual, Residential Oil Burners 3rd Edition, NFPA 31, and the Installation Manual for the Peerless Boiler at the Property;

t. failing to inspect the boiler and its components, including but not limited to the smoke stack, flue piping and chimney, in a good and workmanlike fashion in accordance with accepted practices, codes and industry standards;

7

u. failing to adequately and properly train, instruct, inspect, direct and supervise its employees, agents, representatives, servants and/or subcontractors to perform work and services at the Property;

v. failing to select and hire properly qualified employees, agents, representatives, servants or contractors to perform work and services at the Property;

w. failing to warn Plaintiff's insured of the risk of property damage in connection with the use of the boiler and its components, including but not limited to the smoke stack, flue piping and chimney;

x. otherwise failing to perform its work its work and services at the Property in a safe manner and/or causing or allowing the Fire to occur; and otherwise failing to use due care, as may be disclosed during the course of discovery.

32. As a direct and proximate result of the negligence of Defendant Approved Oil, their agents, employees and/or servants, the Fire occurred and caused severe and extensive damages to the Property and caused Plaintiff's insured to incur additional expenses and losses all in excess of the Policy Limit of $368,576.00.

## COUNT II – BREACH OF CONTRACT

33. Plaintiff repeats and realleges each and every paragraph of the Complaint numbered "1" through "32" as if more fully set forth herein at length and with the same force and effect.

34. Defendant Approved Oil had a duty to complete its work and services at the Property in a good and workman like manner pursuant to the terms of its agreement with the property owners as well as, at common law, an independent duty above and beyond the agreement.

35. As set forth above, Defendant Approved Oil breached its contract by failing to perform its work and services in a good, safe, professional and workmanlike manner. As a direct and proximate result of Defendant Approved Oil's breach of contractual obligations, the Fire occurred, causing extensive damages and destruction to Plaintiff's Insured's property

8

and causing Plaintiff's Insured to incur additional expenses and losses all in excess of the Policy Limit of $368,576.00.

### COUNT III -- BREACH OF WARRANTIES

36. Plaintiff repeats and realleges each and every paragraph of the Complaint numbered "1" through "35" as if more fully set forth herein at length and with the same force and effect.

37. As set forth above, Defendant Approved Oil was hired to perform annual and periodic maintenance and services on the boiler and its components sometime prior to June 30, 2011.

38. The agreement between Defendant Approved Oil and the Property Owners was in effect from at least June 30, 2011 until April 4, 2012.

39. As set forth above, Defendant Approved Oil visited the Property in March, 2012 to perform work and services on the boiler and its components.

40. In agreeing to provide work and services to the boiler and its components, Defendant Approved Oil impliedly and expressly warranted that it would perform its work and services in a safe, good and workmanlike manner.

41. As set forth above, Defendant Approved Oil failed to perform its work and services in a safe, good and workmanlike manner and with the required degree of skill and care in the industry, which constitutes a breach of its express and/or implied warranties, including the warranty of a good and workmanlike performance.

42. As a direct and proximate result of Defendant Approved Oil's breach of express and implied warranties, the Fire occurred, causing extensive damage and destruction to Plaintiff's insured's property and caused Plaintiff's Insured to incur additional expenses and losses all in excess of the Policy Limit of $368,576.00.

WHEREFORE, the Plaintiff, THE TRAVELERS INDEMNITY COMPANY, requests that a judgment and Order be entered as follows:

   a. Compensatory and/or consequential damages incurred as a result of the Fire at issue in this case;
   b. Pre-judgment interest on Travelers' judgment as permitted under New York's Civil Practice Law and Rules;
   c. Post-judgment interest on Traveler's judgment;
   d. Costs for prosecuting this action;
   e. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The Plaintiff, The Travelers Indemnity Company, Inc. hereby demands a trial by jury for all triable issues that are raised in this Complaint.

Dated: September 23, 2014
       Melville, New York

                              Respectfully submitted,

                              LAW OFFICE OF ANDREA G. SAWYERS

                              By: _____
                              ROBERT A. SCHULTZ, ESQ. (RAS-7945)
                              Attorneys for Plaintiff
                              3 Huntington Quadrangle, Suite 102S
                              P.O. Box 9028
                              Melville, New York 11747
                              Telephone: (631) 501-3100
                              Facsimile: (877) 220-7166
                              Email: raschult@travelers.com
                              Matter No.: 2012637302RAS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                                    Docket No. : 14-cv-

THE TRAVELERS INDEMNITY COMPANY,

                                                                                                 Plaintiff,

-against-

APPROVED OIL CO. OF BROOKLYN, INC.
d/b/a Approved Oil and West End Oil,

                                                                                                 Defendant.

*COMPLAINT*

**Law Office of
ANDREA G. SAWYERS**

Attorneys for Plaintiff

Office & P.O. Address
**3 Huntington Quadrangle, Suite 102S
P.O. Box 9028
Melville, New York 11747**

Tel. No.: (631) 501-3100
Fax No.: (877) 220-7166

TO:

Service of a copy of the within                                                                                           is hereby admitted.

Dated:

                                                                           Attorney(s) for

**NOTICE OF ENTRY:**

       **PLEASE TAKE NOTICE** that the within is a true copy of an order entered in office of the Clerk of the above Court on the ____ day of _____ 200 .

**NOTICE OF SETTLEMENT:**

       **PLEASE TAKE NOTICE** that the within proposed order will be presented for settlement and entry at the Courthouse on the ____ day of _____ 200 , at 10:00 a.m. at the office of the Clerk of the Part of this Court where the within described motion was heard.

Dated:     Melville, New York                                                                         **Law Office of
ANDREA G. SAWYERS**
Attorneys for Plaintiff
As Designated Above

[Stamp: LAW OFFICES ANDREA G. SAWYERS / SEP 29 2014 / RECEIVED]